UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIELLE CAMBLARD, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:09-CV-0985 (JCH) |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT | : | JULY 26, 2011 |
| DEPARTMENT OF CHILDREN | : | |
| AND FAMILIES | : | |
|    Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 21)**

**I.  INTRODUCTION**

Plaintiff, Danielle Camblard, brings this suit against her former employer, the Connecticut Department of Children and Families ("DCF"), alleging that she was discriminated against on the basis of her race.  Specifically, Dr. Camblard alleges she was subjected to a pattern of discrimination, disparate treatment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, and the Connecticut Fair Employment Practices Act, Conn. Gen Stat. § 46a-60 *et seq.* ("CFEPA").

DCF filed for summary judgment, claiming that the Eleventh Amendment bars this court from taking jurisdiction over Dr. Camblard's CFEPA claims, and that, regardless of any possible jurisdictional issue, Dr. Camblard cannot raise a material issue of fact to support her claims.  For the reasons set forth below, the court grants DCF's Motion for Summary Judgment (Doc. No. 21).

1

## II. FACTUAL BACKGROUND[1]

Dr. Camblard began her employment with DCF on April 27, 2007 as a Post Doctoral Fellowship Psychologist. Def.'s Local Rule 56(a)(1) Stmt. ¶ 1 (hereafter "L.R. 56(a)(1) Stmt."); Pl.'s Local Rule 56(a)(2) Stmt. ¶ 1 (hereafter "L.R. 56(a)(2) Stmt."). During her orientation, DCF informed Dr. Camblard that, as a new employee, she was subject to a six month working test period. L.R. 56(a)(1) Stmt. ¶ 3; Camblard Deposition at 11:6–16 (hereafter "Camblard Depo."). Sometime after August or September 2007, DCF became aware that Dr. Camblard had completed her timesheet incorrectly on July 27, 2007. See L.R. 56(a)(1) Stmt. ¶ 5–6; L.R. 56(a)(2) Stmt. ¶ 5–6. As part of an investigation into the matter, DCF found that, although Dr. Camblard's timesheet reflected that she had worked that day, she had in fact taken the day off. L.R. 56(a)(1) Stmt. ¶ 7; L.R. 56(a)(2) Stmt. ¶ 7. Dr. Camblard claims that her supervisor at the time instructed her to complete her timesheet in that manner. See Camblard Depo. 42: 8–25; 43: 1–6.

On or about October 27, 2007, Dr. Camblard and DCF entered into a Stipulated Agreement. L.R. 56(a)(1) Stmt. ¶ 8; L.R. 56(a)(2) Stmt. ¶ 8. The agreement extended Dr. Camblard's working test period for an additional six months, reiterated her working hours of 8:00 a.m. until 4:00 p.m., and required her to report to work as scheduled and record her time accurately on her timesheet. See Def.'s Ex. 4. In addition, the agreement notified Dr. Camblard that if she failed to meet the terms of the agreement, she would be dropped during her working test period. See id.

---

[1] The court sets forth here the material facts not in dispute and facts proposed by the parties that are supported by evidence in the record.

On January 14, 2008, Dr. Camblard failed to report to work at 8:00 a.m.  L.R. 56(a)(1) Stmt. ¶ 15; L.R. 56(a)(2) Stmt. ¶ 15.  Dr. Camblard's supervisor contacted her home around 9 a.m. and left a message.  L.R. 56(a)(1) Stmt. ¶ 16; L.R. 56(a)(2) Stmt. ¶ 16.  Dr. Camblard responded to her supervisor by e-mail at 11:07 a.m., acknowledging the call and informing her supervisor that she would be taking leave without pay for the day due to a problem with countertop installation at her home.  See L.R. 56(a)(1) Stmt. ¶ 17; L.R. 56(a)(2) Stmt. ¶ 17; Pl. Opp. Def. Mot. Summ. J., Ex. D.  In addition, Dr. Camblard stated that, due to inclement weather, she believed she had two extra hours to report to work on that day.  Pl. Opp. Def. Mot. Summ. J., Ex. D.  DCF Policy requires employees to notify her supervisor "as far in advance as practical to ensure adequate work coverage."  L.R. 56(a)(1) Stmt. ¶ 18; L.R. 56(a)(2) Stmt. ¶ 18.

Accompanied by her union representative and two supervisors, Dr. Camblard later attended an investigatory meeting regarding her failure to report to work on January 14, 2008, L.R. 56(a)(1) Stmt. ¶ 20; L.R. 56(a)(2) Stmt. ¶ 20.  On January 16, 2008, Dr. Camblard was notified that DCF was dropping her during her working test period in accordance with the Stipulated Agreement and as a result of her failure to report to work on January 14, 2008.  See L.R. 56(a)(1) Stmt. ¶ 22; L.R. 56(a)(2) Stmt. ¶ 22.  Specifically, her supervisors informed Dr. Camblard that they did not consider her countertop problems to be an emergency pursuant to DCF rules.  See Camblard Depo. 60: 14–19.  Dr. Camblard admits that no employees of DCF, including her supervisors, ever made reference to her race.  See L.R. 56(a)(1) Stmt. ¶ 24; L.R 56(a)(2) Stmt. ¶ 24.

## III. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV. DISCUSSION

### A. Connecticut Fair Employment Practices Act

The Eleventh Amendment immunizes a state from facing suit in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). This immunity applies unless the state has consented to the litigation or Congress has specifically overridden the state's immunity. Huang v. Johnson, 251 F.3d 65, 69 (2d Cir. 2001). In order to waive its immunity, a state must "unequivocally express[]" its consent. See Pennhurst, 465 U.S. at 99. A claim against a state agency is considered a claim against the state because the state is a "real, substantial party in interest." Mulero v. Connecticut, Dep't of Educ., 253 F.R.D. 33, 37 (D.Conn. 2008) (quoting Pennhurst, 465 U.S. at 101).

Section 46a-99 permits the Superior Court to grant relief for a CFEPA claim. Conn. Gen. Stat. § 46a-99. This court has previously held that this language does not "rise to the level of the clear declaration required" for a waiver of sovereign immunity, and consequently, Connecticut has not waived its immunity in the federal courts. Mulero, 253 F.R.D. at 38. See also Walker v. Connecticut, 106 F.Supp.2d 364, 370 (D.Conn. 2000). Accordingly, this court lacks jurisdiction over Dr. Camblard's CFEPA claim against DCF and grants summary judgment in its favor.

B.     Title VII

To state a claim under Title VII for racial discrimination, a plaintiff must carry the initial burden of establishing a prima facie case. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The establishment of a prima facie case creates a rebuttable presumption of unlawful discrimination in favor of the plaintiff. See Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997). Following the plaintiff's establishment of a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. See id. The ultimate burden of persuading the trier of fact of intentional discrimination, however, always remains with the plaintiff. See id. If the employer successfully articulates a legitimate, non-discriminatory reason, the rebuttable presumption disappears, and the burden shifts back to the plaintiff to demonstrate that the proffered reason is merely pretext and, more likely than not, the real reason for the employer's action was illegal discrimination. See id.

A record demonstrating a prima facie case and evidence permitting a finding of pretext, however, is not necessarily sufficient to permit a finding of discrimination. See Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 382 (2d Cir. 2001). Whether such evidence is sufficient depends on a case-specific inquiry into "whether a finding of discrimination may reasonably be made" based on the evidence. See id.

1.     Dr. Camblard's Prima Facie Case

To set forth a prima facie case, a plaintiff must demonstrate (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged; and (4) "the discharge occurred under circumstances giving rise to an inference of [racial]

6

discrimination." See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000). The plaintiff's initial burden is minimal and the evidence requirement is de minimis. See Zimmerman, 251 F.3d at 381.

The parties agree that Dr. Camblard satisfies the first three elements of her prima facie case. See Mem. Supp. Summ. J. at 7; Opp. Mot. Summ. J. at 3–4. DCF claims, however, that Dr. Camblard cannot satisfy her burden of proving a prima facie case because she cannot show that the circumstances surrounding her dismissal give rise to an inference of discrimination. See Mem. Supp. Summ. J. at 7. In response, Dr. Camblard claims that she was "compelled to sign" the Stipulated Agreement and that a similarly situated employee, Ms. Chock-Harris "was allowed leeway/leave . . . without discipline or termination of employment."

Dr. Cambard admits that she never saw Ms. Chock-Harris's timesheet. L.R. 56(a)(1) Stmt. ¶ 13; L.R. 56(a)(2) Stmt. ¶ 13. Nonetheless, she maintains that Ms. Chock-Harris's timesheet was completed in the same manner as Dr. Camblard's and yet Ms. Chock-Harris did not suffer the same consequences as Dr. Camblard. See L.R. 56(a)(2) Stmt. ¶ 12; Camblard Depo. 21: 1–20. Ms. Chock-Harris's timesheet shows that she took two sick days during her six month working test period, which began August 3, 2007 and ended February 3, 2007. See L.R. 56(a)(1) Stmt. ¶ 14; Def.'s Ex. 5. If Ms. Chock-Harris did in fact fill out her timesheet the same way Dr. Camblard claims she was instructed to on July 27, 2007—in that she took time off without recording the time off on her timesheet—it would not be clear from Ms. Chock-Harris's timesheet when that had occurred.

7

Dr. Camblard's assertions regarding what Ms. Chock-Harris told her are inadmissible hearsay. Consequently, Dr. Camblard fails to establish the fourth element of her prima facie case. For the purposes of this Motion, however, the court will assume that Dr. Camblard could satisfy this element and set forth a prima facie case.

      2.     DCF's Non-Discriminatory Reason

After the plaintiff sets forth a prima facie case, the burden of production shifts to the defendant to establish a legitimate, non-discriminatory reason for its actions. See Scaria, 117 F.3d at 654. To meet its burden of production, the defendant merely must set forth evidence which, if taken as true, would permit the conclusion that the adverse action was based on a non-discriminatory reason. See Schnabel, 232 F.3d at 88.

Here, DCF states that it terminated Dr. Camblard because she did not report to work at her scheduled time on January 14, 2008, in violation of the Stipulated Agreement she had signed. Mem. Supp. Summ. J. at 10. In addition, DCF claims Dr. Camblard failed to request permission for her absence and did not notify her supervisor of her absence until 11:07 a.m. See id. For the purposes of this Motion only, Dr. Camblard assumes that DCF has satisfied its burden of production. The court agrees.

      3.     Pretext

After the defendant has articulated a non-discriminatory reason for its actions, the burden of production shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual, and that it is more likely than not that the true reason for the defendant's actions was discrimination. See Scaria, 117 F.3d at 654. In order to satisfy her burden at this stage, the plaintiff must come forward with evidence sufficient

for a jury to reasonably conclude that the asserted pretextual reasons were intended to mask racial discrimination. See Schnabel, 232 F.3d at 88.

Dr. Camblard points solely to her own deposition and assertions to support her claim that material questions of fact exist with regard to whether DCF's proffered reason is pretextual. First, she claims that her work environment and employment conditions changed drastically in September 2007, when Alicia Feller became her supervisor. Opp. Mot. Summ. J. at 7. Next, Dr. Camblard alleges that her working test period was "improperly extended" and "she was forced to sign a Stipulated Agreement or face termination." Id. Finally, Dr. Camblard claims that "a home emergency" led to her "immediate termination" in January 2008. Id. Dr. Camblard does not offer any evidence beyond her own assertions. While this evidence is thin, if a jury were to credit those assertions, it could be reasonable for the jury to conclude that DCF's proffered explanation was pretextual. See Schnabel, 232 F.3d at 88 (finding that a jury could credit a letter the plaintiff wrote himself to conclude that the defendants' stated reasons were pretextual).

          4.      Racial Discrimination

A plaintiff does not necessarily avoid summary judgment merely by establishing a prima facie case and presenting some evidence of pretext. See Schnabel, 232 F.3d at 90. Instead, a court must determine, based on the entire record, whether the plaintiff could "satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). In doing so, a court must consider "whether a finding of discrimination may reasonably be made." See Zimmerman, 251

F.3d at 382. To permit such a finding, the plaintiff must at least present some evidence from which a jury could conclude the alleged discrimination occurred. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d Cir. 2001) (finding that one statement by an executive is not enough to meet the plaintiff's burden of showing that the real reason he was fired was because of his age); Schnabel, 232 F.3d at 91 (affirming summary judgment in favor of the defendants where plaintiff presented no evidence supporting his claim of age discrimination).

Dr. Camblard offers no evidence upon which a reasonable jury could conclude that her race was a determinative factor in DCF's decision to terminate her employment. Upon her own admission, no references to her race were ever made at either investigatory meeting or during other interactions with DCF employees. L.R. 56(a)(1) Stmt. ¶ 24; L.R. 56(a)(2) Stmt. ¶ 24. In addition, Dr. Camblard does not set forth any evidence of other instances during her time at DCF where her race was an issue. Because Dr. Camblard has presented no evidence that DCF discriminated against her due to her race, no reasonable jury could conclude that the real reason DCF terminated her employment was because of her race. Accordingly, summary judgment in favor of DCF is appropriate.

C.  Retaliation

In order to set forth a prima facie case for retaliation, a plaintiff must show that "(1) [s]he engaged in an activity protected by [Title VII]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

Dr. Camblard admits that she never filed a complaint with DCF's Affirmative Action Office.  L.R. 56(a)(1) Stmt. ¶ 27; L.R. 56(a)(2) Stmt. ¶ 27.  Although Dr. Camblard did file a complaint with the Commission on Human Rights and Opportunities, she did not file that complaint until after she was dropped from DCF.  L.R. 56(a)(1) Stmt. ¶ 28; L.R. 56(a)(2) Stmt. ¶ 28.  Dr. Camblard does not present any additional evidence of her participation in protected activity or that her employer was aware of such participation.  In fact, Dr. Camblard does not address her retaliation claim at all in her Opposition Brief.  As Dr. Camblard fails to raise any material issue of fact to support her retaliation claim, and seems instead to have abandoned the claim, the court grants summary judgment in favor of DCF with regard to Dr. Camblard's retaliation claim.  See e.g., Coger v. Connecticut, 309 F.Supp.2d 274, 280 (D.Conn. 2004) (considering claims abandoned where plaintiff failed to respond to an argument defendant raised for summary judgment) (quoting Taylor v. City of New York, 269 F.Supp.2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.")).

**V.     CONCLUSION**

For the foregoing reasons, the court grants defendant's Motion for Summary Judgment (Doc. No. 21).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of July, 2011.

                                                     /s/ Janet C. Hall
                                                  Janet C. Hall
                                                  United States District Judge